UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TYRELL KNIGHT, | ) | 4:06CV3065 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| RAYMOND EDELMAN, sued in both | ) | AND ORDER |
| his individual and official | ) | |
| capacities; | ) | |
| UNKNOWN NOORDHOCK, | ) | |
| Corporal, sued in both his | ) | |
| individual and official capacities; | ) | |
| CALVIN HAYWOOD, sued in both | ) | |
| his individual and official | ) | |
| capacities; and | ) | |
| UNKNOWN PIPER, Sergeant, sued | ) | |
| in both his individual and official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Tyrell Knight, filed a § 1983 claim against defendants, in both their individual and official capacities, alleging that they used unnecessary force on him, resulting in corporal, cruel, and unusual punishment in violation of the Eighth Amendment. More specifically, Knight alleged that defendants yanked hard on the come-along chain (come-along)[1] causing him to fall to the ground, flipped him over on his stomach, attempted to suffocate

---

[1] A come-along is a set of handcuffs connected to a chain, which is approximately five feet long. There are two rings hooked to the chain, one chain is about 18 inches from the handcuffs and one chain is about 5 inches from the handcuffs. The purpose of a come-along is to control an inmate's movements.

him, and slammed his head against the cement floor. Defendants deny these allegations. The one-day court trial commenced on Tuesday, March 28, 2009, in Omaha, Nebraska.[2] Knight and his attorney, Jeremy Jorgenson, were present at the trial. Linda Willard and Amie Larson from the Nebraska Attorney General's Office were also present during the one-day court trial. Knight, Caseworker Raymond Edelman, Sergeant Troy Piper, Corporal Brandon Noordhoek, and Randy Crosby testified during the trial.

## FINDINGS OF FACTS

The court finds the following facts have been proven by a preponderance of the evidence:

This case arises out of an incident that occurred in February 2006, at the Nebraska State Penitentiary (NSP). At that time, Knight was an inmate within the custody and control of the Nebraska Department of Correctional Services (NDCS) and was incarcerated in the Control Unit, a higher security unit, at the NSP. Defendant Edelman was a caseworker for NDCS at the NSP; defendant Noordhoek was a corporal for NDCS at the NSP; defendant Piper was a sergeant for NDCS at the NSP; and defendant Calvin Haywood was a case manager for NDCS at the NSP.

---

[2] Over two years after filing his complaint, Knight filed a motion requesting a jury trial. The court found that Knight's demand for a jury trial was over one year past the time limit for demanding a jury trial and, as a result, denied Knight's demand for a jury trial.

On February 23, 2006, Knight was out of his cell for a routine shower. After Knight completed his shower, Sergeant Piper and Corporal Noordhoek attempted to handcuff Knight so they could take Knight back to his cell. Knight refused to come to the gate to be restrained, was uncooperative, and began arguing with Sergeant Piper. Knight was telling Sergeant Piper and Corporal Noordhoek about the cyst on his face and asked them for clean sheets.

At the time, Edelman was running the lever control box. Haywood arrived at the lever control box and Edelman, on his own initiative, retrieved a come-along and approached Sergeant Piper, Corporal Noordhoek, and Knight. When Edelman stepped toward Knight with the come-along, Knight voluntarily stepped forward and was handcuffed by Sergeant Piper. Sergeant Piper also secured the come-along. Corporal Noordhoek put leg irons on Knight. Subsequently, Haywood opened the gallery gate, which allowed the staff members to escort Knight back to his cell. Knight was cooperative during this process.

Sergeant Piper, Corporal Noordhoek, and Edelman started to escort Knight back to his cell.[3] During the escort down the gallery, Knight had on leg irons, handcuffs, and a come-along that was attached to the handcuffs.

---

[3] A normal escort requires two staff. But if an inmate is difficult, the escort usually requires three staff.

While escorting Knight, Edelman was on Knight's left side.  Sergeant Piper was right behind Edelman on the left side of Knight.  Corporal Noordhoek was on the right side of Knight and to the right of Sergeant Piper.

As they were walking down the gallery, Knight started walking slowly and Edelman told Knight that he needed to continue walking.  At some point during the escort to his cell, Knight planted his feet and raised his arms, which pulled the come-along and caused one of the come-along chains to fall out of Edelman's hands.  Responding to this situation, Sergeant Piper and Corporal Noordhoek immediately took Knight to the wall and to the floor.  To accomplish this take down, Sergeant Piper took Knight's upper left arm and Corporal Noordhoek took Knight's upper right arm.  Knight resisted the take down.

Once on the ground, Corporal Noordhoek was in charge of securing Knight's right arm and Edelman was in charge of securing Knight's left arm.  While Knight was secured on the ground, Edelman held Knight's jump suit[4] between himself and Knight because he thought Knight was going to spit.  Edelman, Corporal Noordhoek, and Sergeant Piper kept Knight secured to the floor until the emergency response team arrived.  When the emergency response team arrived, Edelman and Sergeant Piper assisted in handcuffing

---

[4] During the escort, Knight was carrying his jump suit because he had just completed his routine shower.

4

Knight's hands behind his back. After they got the handcuffs situated, the events were videotaped and Corporal Noordhoek and Sergeant Sully escorted Knight to the bull pen area to be checked by medical personnel. Knight was in a state of paranoia and was dizzy. Knight had a scar on his eyebrow and a scar on his knee. Additionally, the incident has caused him to have nightmares at night and to wake up in the middle of the night sweating. After the medical personnel checked Knight, Corporal Noordhoek assisted in taking Knight back to his cell.

## DISCUSSION

The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, regardless of whether an inmate suffers serious injury as a result. Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). Officers do not violate the Eighth Amendment when they use force reasonably "in a good-faith effort to maintain or restore discipline." Hudson, 503 U.S. at 9, 112 S. Ct. at 999. In excessive force cases, it must be "determine[d] whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm." Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1394 (8th Cir. 1997). See also Irving v. Dormire, 519 F.3d 441, 449 (8th Cir. 2008). "Whether a situation justifies the use of force to maintain or restore discipline is a fact specific issue that turns on the circumstances of

the individual case or the particular prison setting." Johnson v. Blaukat, 453 F.3d 1108, 1113 (8th Cir. 2006). Factors for consideration in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. See Hudson, 503 U.S. at 7, 112 S. Ct. at 999.

I.   **Defendants Sergeant Piper, Corporal Noordhoek, and Haywood**

During the trial, after Knight finished presenting his evidence, defendants moved to dismiss the action against them. The court ordered judgment in favor of defendants Sergeant Piper, Corporal Noordhoek, and Haywood. With regards to Sergeant Piper and Corporal Noordhoek, Knight testified that when they took him down, they were doing their job. In fact, Knight commended them on doing an excellent job in relation to the take down. With regards to Haywood, Knight claimed that Haywood should have come down and helped him when the other staff were forceful with him. But Knight testified that Haywood was running the gates and had to stay at the gate operator station. As such, Haywood was not able to assist Knight and Knight was aware of this. Accordingly, the court granted judgment in favor of these defendants after Knight rested his case because even when viewing

6

the evidence in the light most favorable to Knight, Knight had not submitted any evidence to show liability on the part of these three defendants.

## II.     Defendant Edelman

The only remaining issue before the court is whether Edelman used excessive force when escorting Knight back to his cell, resulting in Knight's injuries. Based on the court's factual findings, Edelman did not engage in excessive force with regard to Knight. Instead, Knight planted his feet and lifted his arms, which caused one of the come-along chains to fall from Edelman's hand. After Sergeant Piper and Corporal Noordhoek took down Knight, Edelman assisted in restraining Knight to the ground and held Knight's jump suit between himself and Knight while they waited for the emergency response team to arrive. As such, the facts of this case do not support a finding that Edelman's behavior rose to the level of excessive force.

Even if Edelman pulled Knight with the come-along during the escort, tried to put Knight's jump suit into his mouth, and hit Knight's head against the floor, as Knight alleges, the court finds that Edelman did not use excessive force. Rather, Edelman engaged in a good faith effort to maintain discipline by escorting Knight back to his cell in an orderly fashion, keeping Knight secure, and preventing Knight from engaging in inappropriate behavior towards staff.

7

While maintaining discipline, Edelman used a reasonable amount of force. First, there was an objective need for force because Knight began walking slowly and refused to keep a normal pace. As Knight slowed down, Edelman instructed Knight to walk faster but Knight refused. In order for Edelman to properly escort Knight to his cell, Knight needed to keep a normal pace but Knight refused to do so. After Knight was taken down, it was necessary for Edelman to keep Knight secure and to prevent him from spitting on staff. Second, the relationship between the need for force and the amount of force used was proportionate. The need for force was minimal, and Edelman used a minimal amount of force. Third, Edelman reasonably perceived Knight's behavior as a threat. Knight, who was secured in the Control Unit, a higher security unit, had past behavioral issues and had been acting out prior to the escort. Further, Knight was not following the directions of Edelman. Fourth, Edelman attempted to alleviate the need to use force by ordering Knight to walk at a normal pace. But such efforts were unsuccessful. Fifth and finally, Knight's injuries were not extremely serious. While Knight does have a scar on his eyebrow and knee and continues to have nightmares about the incident, such injuries did not require extensive medical treatment. At trial, Knight was able to stand, sit and walk without pain and was mentally capable of testifying about the alleged incident. Accordingly, the court finds that even if Edelman pulled Knight with the

come-along, tried to put a jump suit into Knight's mouth, and hit Knight's head against the ground, Edelman did not engage in excessive force.

Accordingly, it is hereby

ORDERED that judgment be entered in favor of defendants Sergeant Piper, Corporal Noordhoek, Haywood, and Edelman.

Dated July 28, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE